IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Thomas Pelzer, | ) | |
| | ) | C/A No. 8:10-1603-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Michael McCall, Jr.; Captain Florence | ) | **ORDER AND OPINION** |
| Mauney; N. Andrew Cooper; Ms. Blatton, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Thomas Pelzer is an inmate in custody of the South Carolina Department of Corrections ("SCDC"). At the time of the underlying events, Plaintiff was housed at Perry Correctional Institution ("PCI") in Pelzer, South Carolina, in the Special Management Unit ("SMU"). On June 23, 2010, Plaintiff filed the within action, alleging that Defendants have prohibited prisoners from receiving newspapers, magazines, and radios. Plaintiff asserts that Defendants have violated his rights under the First, Eighth, and Fourteenth Amendments by limiting his access to news. Thus, Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Plaintiff also alleges that Defendants were grossly negligent in their actions.

This matter is before the court on motion for partial summary judgment filed by Plaintiff on February 4, 2011. Defendants filed a response on March 2, 2011, to which Plaintiff filed a reply on March 11, 2011. Also before the court is motion for summary judgment filed by Defendants on April 4, 2011. 2010. On April 5, 2011, an order was issued pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedures and the possible consequences of failing to respond adequately. Plaintiff filed a response in opposition to Defendant's motion on May 11, 2011.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Jacquelyn D. Austin for a Report and Recommendation. On June 29, 2011, the Magistrate Judge filed a Report and Recommendation in which she recommended that Plaintiff's motion for partial summary judgment be denied, and that Defendants' motion for summary judgment be granted. Plaintiff filed objections to the Report and Recommendation on July 11, 2011.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

I.  DISCUSSION

A.    **Magistrate Judge's Report and Recommendation**

1.    First Amendment Claim

Plaintiff contends that his First Amendment rights have been violated because his access to newspapers, magazines, and radios is curtailed. Plaintiff asserts that he is unable to keep abreast of current events. Plaintiff contends that Defendant Cooper, PCI's chaplain provides a weekly newsletter to inmates, but that delivery of the newsletter is sporadic and that the main purpose of the newsletters is to advance Christianity, a religion Plaintiff does not practice. Plaintiff also contends that Defendants' practices prevent him from receiving any rehabilitative or educational materials.

In her thorough Report and Recommendation, the Magistrate Judge determined that Plaintiff's First Amendment rights were not violated by Defendants' restrictions on newspapers, magazines, and radios. The Magistrate Judge, relying on Turner v. Safley, 482 U.S. 78 (1987), noted that a prison regulation that impinges on an inmate's constitutional rights is valid if the regulation is reasonably related to legitimate penological interests. Under Turner, a court must consider four facts to determine if a prison regulation is reasonable: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) how accommodating the constitutional right will impact guards and other prisoners; and (4) whether there are ready alternatives to the regulation. Turner, 482 U.S. at 89-91.

The Magistrate Judge determined that Defendant McCall stated valid penological concerns in attesting that restrictions had been put in place because SMU prisoners had used batteries from radios to construct handcuff keys, and because SMU prisoners had used magazines and newspapers to cover cell lights and the openings of their cell doors. The Magistrate Judge noted that, according to Defendant McCall, SMU prisoners were not restricted from possessing books, but only those materials that were being used to create security issues.

The Magistrate Judge further observed that Defendant McCall stated that he had attempted to provide alternate means of providing information that could be derived from radios, magazines, and newspapers. As noted hereinabove, a newsletter is prepared by the chaplain's office under the direction of Defendant Cooper. The Magistrate Judge noted that, according to Defendants McCall and Cooper, the newsletter is prepared by inmates, supervised by Defendant Cooper, and intended to be prepared on a weekly basis, although this goal is not always realized because Defendant Cooper

must rely on outside donations of paper and inmate time to prepare the newsletter. In addition, Defendant McCall instituted the bi-monthly distribution of a newsletter entitled "Perry SMU Information & Awareness."

As to the impact of accommodation on guards and other prisoners, the Magistrate Judge noted that, according to Defendant McCall, failing to restrict these items would unduly burden limited resources and personnel by requiring correctional officers and supervisors to address the security issues raised by SMU prisoners' access to newspapers, magazines, and radios. According to Defendant McCall, additional time would be required to search prisoners' cells for keys made from batteries as well as confiscating newspapers and magazines that were used to cover cell door openings and cell lights. Defendant McCall also noted the likelihood that some level of force would be required to secure compliance with proper use of these items, thus constituting a threat to officers and other employees in the area, as well as other prisoners.

The Magistrate Judge further noted that, according to Defendant McCall, no ready alternatives to the restriction exist, and that Plaintiff had not presented any reasonable alternative to the regulation. The Magistrate Judge noted that Turner does not impose a least-restrictive alternative test. Rather, the issue is whether the prisoner "can point to an alternative that fully accommodates the prisoner's rights at a *de minimis* cost to valid penological interests[.]" Turner, 482 U.S. at 90. The Magistrate Judge concluded that the restriction on the possession of newspapers, magazines, and radios passes constitutional muster under the inquiry mandated by Turner. Accordingly, the Magistrate Judge recommended that Defendants' motion for summary judgment should be granted as to Plaintiff's claim that restriction of these materials violates his First Amendment rights.

Next, the Magistrate Judge addressed Plaintiff's claim that the newsletters provided by

Defendant Cooper violated the Establishment Clause of the First Amendment. According to Plaintiff, the newspapers made him a forced participant in the PCI Christian community. The Magistrate Judge, relying on Lemon v. Kurtzman, 403 U.S. 602, 613 (1971), noted that a government regulation must meet three requirements to avoid violating the Establishment Clause: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion." (Internal quotations omitted.)

The Magistrate Judge noted that Plaintiff acknowledges the newsletter disseminated by Defendant Cooper has a secular purpose and satisfies the first requirement of Lemon. The Magistrate Judge determined that a reasonable observer would fairly understand that, in its particular setting, the newsletter does not impermissible advance or endorse religion. See Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 271 (4th Cir. 2005). In support of this determination, the Magistrate Judge noted that, according to Defendant Cooper, the purpose of the newsletter was to provide information, not to convert other prisoners. In addition, no prisoner was required to receive the newsletter or any other information from the chaplain's office.

In support of the third Lemon requirement, the Magistrate Judge noted that Defendant Cooper's newsletter was not produced with government funds, that its purpose was to provide information, and that prisoners were not required to receive the newsletter. In addition, Defendant McCall instituted the dissemination of another newsletter for SMU prisoners. The Magistrate Judge found no excessive government entanglement with religion. Consequently, the Magistrate Judge concluded that Plaintiff failed to demonstrate a violation of his rights under the First Amendment.

2.   Eighth Amendment Claim

Plaintiff contends that SMU prisoners were allowed to borrow from the library only fiction or biographies and were restricted from receiving rehabilitative or educational matter, such as dictionaries or GED study guides. Plaintiff asserts that the prohibitions against receiving full access to library materials constituted an unconstitutional condition of confinement and violated his right to be free from cruel and unusual punishment.

Relying on Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996), the Magistrate Judge noted that, to determine whether prison officials have violated a prisoner's Eighth Amendment rights, a court must analyze "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." The Magistrate Judge noted that, to establish the subjective component of a conditions-of-confinement claim, a prisoner must demonstrate that prison officials acted with deliberate indifference. As to the objective component of a conditions-of-confinement claim, the Magistrate Judge noted that a prisoner must demonstrate an extreme deprivation of his rights.

The Magistrate Judge observed that, according to PCI's education coordinator, Defendant Bratton (incorrectly denominated as "Ms. Blatton" in the caption), dictionaries and other reference materials are maintained in the reference section of the library and cannot be checked out by any prisoners. Defendant Bratton also attested that the library possesses only a limited number of GED books, and the limited supply is used only in the classroom. Defendant Bratton stated that SMU prisoners are not allowed to posses hard cover books, but otherwise there are no restrictions on the content of the books SMU prisoners may check out. The Magistrate Judge further noted that,

according to Defendant Bratton, SMU prisoners destroyed 100 of the 150 books sent to SMU in the summer of 2010, and additional books were ordered to be rotated among SMU dorms. Based on these facts, the Magistrate Judge determined that Plaintiff had not demonstrated an extreme deprivation to any right he might have to library materials, or that Defendants acted with deliberate indifference in depriving Plaintiff of such a right. The Magistrate Judge concluded that Plaintiff had failed to show a violation of his rights under the Eighth Amendment.

    3.     Fourteenth Amendment Claim

Plaintiff contends that SMU prisoners' restricted access to library materials violates his right to equal protection of the laws because general population prisoners have full access to library materials. Plaintiff also contends that his right to equal protection has been violated because SMU prisoners in other SCDC facilities have access to dictionaries, encyclopedias, reading materials, magazines, newspapers, and radios.

The Magistrate Judge noted that the equal protection clause of the Fourteenth Amendment prohibits states from denying any person equal protection of the laws. Relying on Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001), the Magistrate Judge observed that two elements must be met to establish an equal protection claim: First, the plaintiff must demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Second, once this showing is made, the court must determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

The Magistrate Judge determined that Plaintiff failed to establish the first element because he was unable to show that he was treated differently from other SMU prisoners at PCI. The

Magistrate Judge further noted that, to the extent SMU prisoners are a similarly situated group to SMU prisoners in other SCDC institutions, Plaintiff failed to show that the unequal treatment was the result of intentional or purposeful discrimination. To the contrary, the Magistrate Judge found that the policies restricting SMU prisoners at PCI from full access to the library are the result of reasonable determinations made by responsible, experienced prison administrators to preserve the security of the facility. Accordingly, the Magistrate Judge concluded that Plaintiff failed to demonstrate a violation of the Equal Protection Clause.

  4.  Gross Negligence Claim

Plaintiff contends that Defendants were grossly negligent. The Magistrate Judge noted that Plaintiff's claim appears to state a claim under the South Carolina Tort Claims Act. Specifically, S.C. Code Ann. § 15-78-60(25) provides that a governmental entity is liable for loss resulting from the supervision, protection, control, confinement, or custody of a prisoner if conducted in a grossly negligent manner. The Magistrate Judge, relying on Etheredge v. Richland Sch. Dist. One, 534 S.E.2d 275, 277 (S.C. 2000), noted that gross negligence has been defined as the failure to exercise slight care, and, alternatively, as the absence of care that is necessary under the circumstances. The Magistrate Judge determined that there was no foundation in the record to support a finding that Defendants have failed to exercise slight care by restricting SMU prisoners' access to certain materials.

  5.  Qualified Immunity

Defendants assert they are entitled to qualified immunity because the conduct complained of did not violate any clearly-established rights of which a reasonable governmental official would have know. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Magistrate Judge noted that

a court "'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)). The Magistrate Judge concluded that, because Plaintiff's allegations fail to demonstrate that Defendants violated Plaintiff's constitutional rights, Defendants are entitled to qualified immunity.

B.   **Plaintiff's Objections**

Plaintiff contends that the Magistrate Judge erred in finding a valid connection between the prison regulations regarding newspapers, magazines, and radios because Defendants have not produced actual evidence to support their contentions that SMU prisoners were making keys out of batteries, or covering their cell doors and lights with newspapers and magazines. However, as the Magistrate Judge properly noted, prison officials are not required to produce actual evidence to validate their concerns. As stated by the Fourth Circuit in In re Long Term Administrative Segregation, 174 F.3d 464, 469 (4th Cir. 1999),

> In the difficult and dangerous business of running a prison, frontline officials are best positioned to foresee threats to order and to fashion responses to those threats. Hence, the evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution under examination. When a state correctional institution is involved, the deference of a federal court is even more appropriate. Prison officials should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

(Internal quotations and citations omitted). Contrary to Plaintiff's contention, prison officials may limit First Amendment rights whenever they reasonably conclude that the exercise of such rights possesses the likelihood of disruption of prison order or stability or otherwise interferes with the

penological objections of the institution. <u>Pittman v Hutto</u>, 594 F.2d 407, 411 (4th Cir. 1978) (citing <u>Jones v. N.C. Prisoners' Labor Union, Inc.</u>, 433 U.S. 119, 129-32 (1977)). Plaintiff's objection is without merit.

Plaintiff next contends that the Magistrate Judge erred in finding that Defendants provided Plaintiff with an alternative means of exercising his First Amendment rights. Plaintiff contends that the alternative means put forth by Defendants, the newsletter disseminated under the supervision of Defendant Cooper, was inadequate because he received only one newsletter during a period of six months. Plaintiff asserts that the newsletter contained only two small sections of news, while the remainder was Christian literature. However, as the Magistrate Judge properly found, Defendant Cooper's alleged inability to provide newsletters on a consistent basis does not detract from Defendants' attempts to provide an alternate means for Plaintiff to exercise his First Amendment rights. Moreover, Defendant McCall instituted the promulgation of the Perry SMU Information & Awareness newsletter, which has been distributed twice a month since February 2010. Plaintiff's objection is without merit.

Plaintiff next asserts that the Magistrate Judge erred in finding that a lifting of the restriction on newspapers, magazines, and batteries would negatively impact SMU guards, SCDC employees, and other prisoners. Plaintiff contends that the SMU guards conduct shakedowns of every cell numerous times weekly and often daily. Plaintiff also asserts that Defendants' failure to validate their claims that prisoners were making keys out of batteries and covering cell doors and cell lights with newspapers and magazines demonstrates that there is no threat to officers, employees, or other prisoners.

The fact that SMU guards are required to conduct shakedowns on a regular basis only

demonstrates the dangerous surroundings in which they operate, and compels the conclusion that the provision of newspapers, magazines, and radios to SMU prisoners would increase the security risks inherent in the SMU environment. The court notes that, according to Defendant McCall, the improper use of newspapers, magazines, and batters was not limited to just a few SMU prisoners, but instead was creating serious security issues. Plaintiff's objection is without merit.

Plaintiff next contends that nothing was accomplished by Defendants' restriction of newspapers, magazines, and radios. Plaintiff states that, if SMU prisoners still want to cover their cell door openings and cell lights, they can do it with other forms of paper. However, according to Defendant McCall, restrictions on the possession of all paper would raise issues concerning access to the courts. Defendant McCall also has stated that problems with SMU prisoners covering their cell door openings and lights with paper has occurred with less frequency since access to newspapers and magazines was prohibited. Plaintiff's contention is without merit.

Finally, Plaintiff contends he should be allowed to proceed to trial on his Fourteenth Amendment due process and procedural due process claim because the Magistrate Judge failed to rule on this issue.

In Paragraph 37(b), of his complaint Plaintiff contends he has a liberty interest in his right of access to news, that Defendants have violated his right to access to the news, and that Defendants should have provided Plaintiff with more procedure to protect his rights. Complaint 11, ECF No. 1. To the extent Plaintiff makes a substantive due process argument, his claim must be view through the Turner lens because the Turner analysis applies to all circumstances in which the needs of prison administration implicate constitutional rights. Washington v. Harper, 494 U.S. 210, 224 (1990). The court has already determined that the SMU restriction is acceptable under Turner.

To establish a procedural due process claim, Plaintiff must demonstrate (1) the deprivation of a protected liberty interest, and (2) lack of procedures to protect that interest. Board of Regents v. Roth, 408 U.S. 564, 570-71 (1972). If a claimant cannot establish that he has been deprived of a constitutionally protected interest, there is no need to consider whether he received due process. Wilkinson v. Austin, 545 U.S. 209, 221 (2005) ("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest."). In this case, Plaintiff has not established that he has been deprived of constitutionally protected interest. Therefore, the court need not consider whether he received procedural due process. Plaintiff's claim is without merit.

## II.  CONCLUSION

For the reasons stated herein and in the Report and Recommendation, Plaintiff's motion for partial summary judgment (ECF No. 52) is **denied**. Defendants' motion for summary judgment (ECF No. 74) is **granted**, and the case dismissed.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

September 30, 2011

## NOTICE OF RIGHT TO APPEAL

**Plaintiff is hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**